Janice D. Dudensing (Bar No. 279561)
Christopher S. Buckley (Bar No. 232413)
*Dudensing/Buckley*
925 G Street
Sacramento, CA 95814
Telephone: (916) 448-3122
Facsimile: (916) 244-0180

Attorney for Plaintiffs
FRED BREINING and CATHY BREINING

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA- SACRAMENTO DIVISION

| | |
|---|---|
| FRED BREINING AND CATHY BREINING,<br><br>   Plaintiff,<br><br>vs.<br><br>OCWEN LOAN SERVICING, LLC; and DOES 1-20 inclusive,<br><br>   Defendants. | Case No. 2:13-cv-02441-JAM-EFB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT OCWEN LOAN SERVICING, LLC MOTION TO DISMISS**<br><br>Date:   February 5, 2014<br>Time:   9:30 a.m.<br>Crtrm.: 6, 14th Floor<br><br>Judge: Honorable John A. Mendez |

## I. INTRODUCTION

This case is one of many where innocent borrowers were defrauded into an unconscionable mortgage loan. Once realizing the true terms of the loan, Plaintiffs here applied and were offered a loan modification. At the time of this offer and acceptance, California had yet to implement its Homeowners Bill of Rights ("HBOR"). The political climate differed substantially and simply put

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 1

the servicer at that time (GMAC) got away with its unconscionable behavior. However, since then, Plaintiffs' loan servicer has changed to Ocwen (although Wells Fargo continues to own the Note) and Plaintiffs reapplied for a loan modification. Ocwen does not deny this. Ocwen engaged in reviewing Plaintiffs for a loan modification but utterly failed to comply with HBOR. Plaintiffs have properly pleaded as much. Ocwen does not dispute this. Instead, Ocwen bad mouths Plaintiffs and sets forth numerous bogus defenses that it knows has not been accepted by *any* court statewide. For these reasons, as set forth more fully below, Defendant's motion to dismiss should be overruled.

## II. STATEMENT OF FACTS

On or about April 2, 2012, Plaintiffs requested a HAMP loan modification from their servicer at the time, GMAC. During the next month, Plaintiffs requested a HAMP loan modification on two or more occasions. Finally, in June of 2012, Plaintiffs received a HAMP loan modification application. On July 2, 2012, Plaintiffs sent by facsimile the completely filled out loan modification application with the requested documents. GMAC acknowledged the receipt of the loan modification documents on the same date. *See* Plaintiff's Complaint, 6-8.

On July 31, 2012 Plaintiffs contacted GMAC to inquire about the status of their loan modification application. On August 1, 2012, GMAC contacted Plaintiffs and acknowledged receipts of previous documents, but requested additional documents. On August 6, 2012, Plaintiffs sent by facsimile the requested additional documents and on August 6, 2012, GMAC confirmed the same. On August 16, 2012, GMAC contacted Plaintiffs and requested updated paystubs from the Plaintiffs. On August 22, 2012, Plaintiffs provided updated paystubs to GMAC and requested an overall update on the loan modification. GMAC confirmed receipt of all required documents and the representative stated that he would let Plaintiffs know as soon as he hears anything further regarding the loan modification. *See* Plaintiff's Complaint, 9-12.

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 2

Several weeks passed without an update from GMAC. On November 26, 2012, Plaintiffs requested an update from GMAC. On November 26, 2012, GMAC stated that the file had gone stale. When asked why, Plaintiffs did not receive a response from GMAC. On or about December 12, 2012, GMAC stated that if the Plaintiffs wanted to be considered for a HAMP loan modification that they would have to start all over. *See* Plaintiff's Complaint, 13-15.

On December 27, 2012 Plaintiffs provided an entire new HAMP loan modification to GMAC. The application was acknowledged by GMAC. On January 15, 2013, notwithstanding Plaintiffs had provided a complete loan modification, which was acknowledged by GMAC on December 27, 2012, GMAC requested additional documents from Plaintiffs. Notably, such conduct occurred after California's Homeowner Bill of Rights (HBOR) became effective. *See* Plaintiff's Complaint, 16-17.

Plaintiffs timely provided the additional documents on January 21, 2013, which were received and acknowledged by GMAC. On February 6, 2013, Plaintiffs received a notice from GMAC stating that the servicing of their loan had been transferred to Ocwen Loan Servicing, LLC. On the notice it stated in relevant part:

Ocwen is committed to helping homeowners. If you are currently on a trial modification plan or have a modification review underway, this process will continue. You should continue making your payments as required in the modification plan. **If you recently submitted financial documentation to be considered for payment options, it is not necessary to re-send the documents to Ocwen, as the information will automatically transfer.**

On February 8, 2013, a representative of GMAC knocked on the Plaintiff's residence. The GMAC representative asked if the home was being occupied and gave Plaintiffs a notice stating to contact GMAC immediately. When asked why, the representative alluded that foreclosure proceedings were beginning on Plaintiffs' home. On February 11, 2013, Plaintiffs contacted GMAC

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 3

inquiring about the status of their loan modification. GMAC stated it "would provide an update of the loan modification application when [he] had one." Between February 11, 2013 and May 29, 2013, neither GMAC nor Ocwen provided Plaintiffs with a status of their loan modification application. Nor did either request additional documents or information. *See* Plaintiff's Complaint, 20-21.

On February 26, 2013 Plaintiffs requested the contact information for the single point of contact at Ocwen. Plaintiffs were not given a single point of contact at Ocwen and were told to continue directing all questions to GMAC. On May 30, 2013, Ocwen sent a correspondence to Plaintiffs stating in relevant part: "you are hereby notified that you have 30 days from the date of this letter to contact us and resolve your delinquency. If you fail to resolve the delinquency within that period of time, we are permitted under the laws of the State of California to foreclose on your property." On that same date Ocwen was in possession of Plaintiffs complete loan modification application. *See* Plaintiff's Complaint, 22-23.

On May 31, 2013, Plaintiffs requested an update on their loan modification. They did not receive one. On June 4, 2013 Ocwen sent a correspondence which stated in relevant part: "We recently received your request for a Traditional loan modification. We are unable to fulfill your request at this time for the following reason(s): We previously requested additional information from you which had not been received; therefore, we are unable to continue our review for workout solutions." Plaintiffs never received a request for additional information which was not complied with as evidenced by all correspondence and facsimiles to GMAC. *See* Plaintiff's Complaint, 24-26.

To date, Plaintiffs, through counsel, have requested for information/updates regarding their loan modification application on numerous occasions and have not received a response. Plaintiffs have no idea what is going on with their loan modification application.

//

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 4

### III. LEGAL STANDARD

A Rule 12(b) (6) motion tests the legal sufficiency of a claim. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2011). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a complaint must provide a "short and plain statement" of claims showing entitlement to relief. Fed.R.Civ.P. 8(a)(2). Thus, a claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir.1996).

In deciding such a motion, **all material allegations of the complaint are accepted as true**, as well as all reasonable inferences to be drawn from them. *Cahill*, 80 F.3d at 338. The allegations of the complaint must also be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428,435 (9th Cir.2000). Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

### IV. LEGAL ARGUMENT

#### A. HBOR DOES APPLY TO THE BREININGS' LOAN

The exercise of the reserved power of the State relating to the enforcement of existing contracts in order to meet public need or a pressing public disaster is Constitutional as long as the exercise of such power is limited by reasonable conditions appropriate to the emergency. *Brown v. Ferdon*, 5 Cal.2d 226, 230 (1936); *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 439-40 (1934). Economic interests of state may justify exercise if its continuing and dominant protective power, notwithstanding interference with contracts. U.S.C.A.Const. art. 1, § 10. *Home Bldg. & Ass'n v. Blaisdell*, 290 U.S. 398, 54 S. Ct. 231, 78 L. Ed. 413 (1934). The test whether a state action is Constitutional turns on whether the State had a legitimate end which was reasonably drawn to accomplish that end. *Id.*

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 5

Defendant argues that Plaintiff's loan is not subject to HBOR since it was originated before 2013. Such an assertion is simply absurd. Defendant attempts to support such a contention by bolding claiming that this State's enactment of HOBR was unconstitutional. However, the cases Defendant cites are entirely distinguishable given that such cases were found to be overbroad and absolute without condition. *Brown v. Ferdon,* at 233. Entirely distinguishable, here HBOR was narrowly tailored to an important state goal. Specifically, as a result of the mortgage lenders and servicer's abuse and the resulting foreclosures and tax payer dollars lost therefrom, on March 14, 2012, the United States and all fifty states brought suit against several mortgage servicers, including Wells Fargo (the owner of the Note in this case), alleging misconduct with the improper issuance of mortgages, premature and unauthorized foreclosures, violations of service members and homeowner rights and protection and the use of false and deceptive affidavits and other documents, as well as the waste and abuse of taxpayer funds. *See* United State District Court For the District of Columbia, Case No: 1:2-cv-00361-RMC. The action resulted in the National Mortgage Settlement whereby the signatories to the settlement agreed to correct their unlawful conduct. Notably, Wells Fargo *signed* the settlement release basically limiting the manner in which it could nonjudicially foreclose upon a home. As a result of learning of the sharp practices of these servicers, many of the States, as did California, essentially codified the National Mortgage Settlement in order to hold mortgage servicers accountable for their unlawful conduct regarding nonjudicial foreclosures. *See* California Monitor, A Program of the California Attorney General. To that end, California enacted HBOR. Thus, unlike the cases cited by Defendant, the HBOR was punitive in nature and was not enacted to interfere with the servicer's contract with the borrowers. Instead, HBOR was a narrowly tailored legislative act to forward the important state goal of preventing the *abuse* and *unlawful* conduct that gave rise to *all* fifty states bringing an action against lenders and servicers.

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 6

Given that the holder of the Note, Wells Fargo, signed the National Mortgage Settlement Agreement, it is abundantly clear that this State's legislation was reasonable and closely tied its goal of preventing servicers from engaging in unlawful conduct relating to nonjudicial foreclosures. Since HBOR does not violate the Contract Clause, this Court should deny Defendants' motion to dismiss Plaintiff's HBOR claims.

### B. PLAINTIFFS' FIRST CLAIM FOR VIOLATION OF CIVIL CODE SECTION 2923.7 IS PROPERLY PLEADED

California Civil Code Section 2923.7 reads in pertinent part:
> (a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.
> (b) The single point of contact shall be responsible for doing all of the following:
>   (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.
>   (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.
>   (3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.
>   (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.
>   (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.
> (c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.
> (d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.
> (e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 7

member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

Here, Plaintiffs have properly pleaded a violation of this portion of the Code. Specifically, Plaintiffs have pleaded "on February 26, 2013, Plaintiffs contacted their servicer and requested a single point of contact from Ocwen. Plaintiffs were never given such information . . . [f]rom February 2013 through June 6, 2013, Plaintiff never received a request for additional information from Ocwen [n]or did Ocwen provide Plaintiffs with updates of their loan modification application. *See* Plaintiffs' Complaint, 6: 28-32. Ocwen's failure to update Plaintiffs, failure to have access to current information and failure to have personnel sufficient to timely, and failure to accurately inform the borrowers of the current status of their loan modification application are violations of HBOR. Moreover, given the egregious conduct of constantly and purposefully failing to respond to Plaintiffs' request for updated information, Plaintiffs are entitled to the greater of treble actual damages or statutory damages of $50,000.

In defense, Ocwen argues "no NOD has yet been recorded against the 965 Piermont Court property. . . [a]ll three causes of action based on the HBOR fail for this simple reason." Ocwen cites *Cf. Emick v. JPMorgan Chase Bank* for this erroneous, misleading position. *See* Defendant's Motion to Dismiss, 9:17-21. However, that case held that while a "dual tracing" claim could not survive without a filing of a NOD, a claim based on violation of section 2923.7 could. *Cf. Emick v. JPMorgan Chase Bank,* at *4.

Since Plaintiffs have properly pleaded a claim for violation of HBOR, section 2923.7, Defendant's motion to dismiss this claim should be denied.

### C. PLAINTIFFS HAVE SINCE LEARNED THAT A NOTICE OF DEFAULT HAS NOT BEEN FILED ON THE SUBJECT PROPERTY SO PLAINTIFFS VOLUNTARILY DISMISS THE SECOND CLAIM FOR DUAL TRACKING

Here, Plaintiffs were told by an Ocwen servicer representative that while under

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 8

1 complete loan modification review, that Ocwen was moving forward with foreclosure. Plaintiffs brought the instant action to prevent Ocwen's apparent "dual tracking." However, Plaintiffs have learned that a NOD has not been recorded. Thus, Plaintiffs dismiss their claim of dual tracking and will bring such an action if Ocwen moves forward with the recording of the NOD while Plaintiffs are under loan modification review.

### D. PLAINTIFFS THIRD CLAIM FOR VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2924.18 IS PROPERLY PLEADED

Similar to Section 2923.7, the validity of Plaintiffs' claim for violation of section 2924.18 does not turn on whether a NOD was recorded. Indeed, section 2923.7 reads in pertinent part:

> (a) When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information:
> (1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.
> (2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.
> (3) Any expiration dates for submitted documents.
> (4) Any deficiency in the borrower's first lien loan modification application.

Here, Plaintiffs have properly pleaded a claim for violation of this section. Specifically, Plaintiffs have pleaded that after the servicing rights of the subject loan were assigned to Ocwen in February of 2013 that Ocwen failed to properly update Plaintiffs regarding their loan modification

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 9

application and failed to properly evaluate the application in a timely manner. *See* Plaintiffs' Complaint, 10:46-49. Moreover, Ocwen failed to request additional documents from Plaintiffs or inform Plaintiffs of any deficiency in Plaintiffs' application. Ocwen simply did nothing. To date, Plaintiffs have requested an update through counsel on more than six occasions. Each request has been simply unanswered. In fact, since the instant suit was filed, Plaintiffs, through counsel has documentation showing the regular attempts to receive status of the loan modification application. Ocwen's failure to address such requests for an update and to sit on the file for nearly a year is a blatant violation of section 2924.10 and Plaintiffs have pleaded as much.

Since Plaintiffs have properly pleaded a claim for violation of section 2924.10, which does *not* require a recording of the NOD, then Defendant's motion to dismiss must be denied.

## V. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss.

Dated: January 2, 2013                                      *Dudensing/Buckley*

                                                            */s/ Jan D. Dudensing*
                                                            _____
                                                            Janice D. Dudensing

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 10

# PROOF OF SERVICE

*Brening v. Ocwen Loan Servicing, LLC; USDC, Eastern District Case No: 2:13-cv-02441-JAM-EFB*

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO,

I am employed in the County of Sacramento, State of California. I am over the age of 18 and not a party to the within action. My business address is 925 G Street, Sacramento, California 95814.

On January 3, 2014, I served the foregoing document described as **OPPOSITION TO DEFENDANT OCWEN'S MOTION TO DISMISS** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as stated on the attached:

Jon D. Ives (SBN 230582)
SEVERSON & WESON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111

[xx]  **BY MAIL** - I deposited such envelope in the mail at Sacramento, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Sacramento, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

XX   **BY ELECTRONIC TRANSMISSION** - I transmitted a PDF version of this document by electronic mail to the party(s) identified on the attached service list using the e-mail address(es) indicated.

XX   (Federal)   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on ___ at Sacramento, California.

_____/s/_____
ALICIA AMARO

Plaintiff's Opposition to Defendant's
Motion to Dismiss Plaintiff's Complaint
Page 11