| | |
|---|---|
| FRED BREINING, et al., | No. 2:13-cv-02441-TLN-DB |
| Plaintiffs, | |
| v. | **ORDER** |
| OCWEN LOAN SERVICING, LLC, et al., | |
| Defendants. | |

This matter is before the Court on Defendant Ocwen Loan Servicing, LLC's ("Defendant" or "Ocwen") Motion for Summary Judgment. (ECF No. 36.) Plaintiffs Fred Breining and Cathy Breining ("Plaintiffs") oppose the motion.[1] (ECF No. 40.) In their opposition, Plaintiffs request that the Court dismiss their First and Second Causes of Action without prejudice. Defendant has filed a reply that addresses, among other things, Plaintiffs' request. (ECF No. 41.) The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, (i) the First and Second Causes of Action are DISMISSED without prejudice, and (ii) Defendant's Motion for Summary Judgment is DENIED as to the Third Cause of Action.

## I.   INTRODUCTION

Defendant is the current servicer of Plaintiffs' mortgage. The case arises out of Plaintiffs' attempts to obtain a loan modification with respect to that mortgage. The Second Amended

---

[1] Where necessary to distinguish between Plaintiffs, the Court will use their first names.

Complaint ("the SAC," ECF No. 25) is the operative complaint.  The SAC sets out the following three causes of action: (i) violation of California Homeowner Bill of Rights ("the HBOR"), Cal. Civ. Code § 2923.7; (ii) violation of the HBOR, Cal. Civ. Code § 2924.10(a); and (iii) negligence. As noted above, Plaintiffs have requested that the First and Second Causes of Action be dismissed without prejudice.  Having carefully reviewed the parties' submissions, the Court concludes that Defendant has not met its burden to demonstrate that it is entitled to judgment as a matter of law on Plaintiffs' Third Cause of Action.  Before proceeding, the Court will briefly set out the factual and procedural background.

## II.    FACTUAL BACKGROUND[2]

On June 30, 2006, Plaintiffs took out a $300,000 mortgage loan from First Federal Bank of California and secured their promise to repay the loan with a deed of trust encumbering property located at 965 Piermont Court, Galt, California.  (ECF No. 40-5 at ¶ 1.)  GMAC Mortgage, LLC ("GMAC") was their prior loan servicer.  (ECF No. 40-5 at ¶ 2.)  On February 6, 2013, the servicing rights to Plaintiffs' loan were transferred to Defendant.  (ECF No. 40-5 at ¶ 3.)  When this action was filed, Plaintiffs had not made a payment on their loan since early 2010, and were more than $80,000 in arrears.  (ECF No. 40-5 at ¶ 4.)  As of the filing of the instant motion, no notice of default has been recorded against Plaintiffs' property.  (ECF No. 40-5 at ¶ 5.)

Plaintiffs were first offered a loan modification on July 27, 2011.  (ECF No. 40-5 at ¶ 6.) There is a dispute regarding whether this offer was timely accepted.  (ECF No. 40-5 at ¶ 7.)  This leads to a dispute with respect to whether it is correct to say Plaintiffs were offered subsequent loan modifications.  (*See* ECF No. 40-5 at ¶ 11.)  These disputes are immaterial to the resolution of the instant motion.

In any event, Plaintiffs submitted a loan modification application on December 7, 2012, to GMAC, which Plaintiffs admit did not include Fred's social security number and did not answer

---

[2]     Unless otherwise indicated, the facts set out in this section are undisputed.  References are primarily made to "Plaintiff's [sic] Response to Defendant Ocwen Loan Servicing, LLC's Statement of Undisputed Facts in Support of its Motion for Summary Judgment" (ECF No. 40-5) and "Plaintiffs' Statement of Disputed Facts in Support of Plaintiffs' Opposition to Ocwen Loan Servicing, LLC's Motion for Summary Judgment" (ECF No. 40-4).

"the four HAMP questions" in Section 1 of the application.[3] (ECF No. 40-5 at ¶¶ 13–14.) On January 15, 2013, GMAC requested Plaintiffs provide the following additional information to complete their loan modification application: (i) Fred's social security number, (ii) the answer to "the four HAMP questions" in Section 1 of the application, (iii) information on whether Cathy had any income, and (iv) Fred's two most recent paystubs. (ECF No. 40-5 at ¶ 15.)

Defendant's submissions as to what happened next are not clearly presented. According to Defendant, on January 21, 2013, Plaintiffs "*resubmitted* almost the identical defective application that they submitted *in late December or early January 2013* — the same one missing the answer to the HAMP questions and missing [Mr.] Breining's social security number." (ECF No. 40-5 at ¶ 17 (emphasis added).) Although not clearly stated, it seems Defendant acknowledges having received at least three applications between December 7, 2012, and January 21, 2013. In any event, Defendant acknowledges that Plaintiffs provided the requested paystubs for Fred and indicated that Cathy did not have an income. (ECF No. 40-5 at ¶ 16.)

Plaintiffs' version of these events is also presented in an unclear way. Plaintiffs deny submitting a loan modification application on January 21, 2013. (ECF No. 40-5 at ¶ 17.) Instead, Plaintiffs asserted they submitted a loan modification application to GMAC either on December 27, 2012, December 31, 2012, or both.[4] (*Compare* ECF No. 40-5 at ¶ 17 *with* ECF No. 40-4 at ¶ 13.) Then, they learned of the missing items on January 15, 2013. (ECF No. 40-5 at ¶ 15.) After learning this, Plaintiffs contend they "timely provided the additional documents on January 21, 2013." (ECF No. 40-4 at ¶ 15.) It seems Plaintiffs are arguing the following point: they view their submission of "additional documents" as a supplement to an already submitted application, rather than a new application.

Plaintiffs have submitted an email chain to support their version of events. (*See* ECF No.

///

---

[3] Both parties use the acronym HAMP without ever defining it. This is presumably a reference to the Home Affordable Modification Program.

[4] In one place Plaintiffs assert that "*[t]he loan modification* was submitted on *December 27, 2012*." (ECF No. 40-5 at ¶ 17 (emphasis added).) In another place, they assert that "*[o]n December 31, 2012*, Plaintiffs provided an entire new HAMP loan modification to GMAC." (ECF No. 40-4 at ¶ 13 (emphasis added).)

3

40-1 at 49–64.)[5]  This chain contains an email, dated January 21, 2013, which appears to be from a person named Heidi Payne (identified as a legal assistant in Plaintiffs' counsel's office) to Defense counsel.  (ECF No. 40-1 at 50.)  The email reads in relevant part as follows: "I have attached the documents that you have requested.  Please note that Mrs. Breining does not have an income.  Should you have any additional questions, please do not hesitate to contact our office."  (ECF No. 40-1 at 50.)  This is followed by an email, dated January 21, 2013, which appears to be from Defense counsel to Ms. Payne, cc'ing Plaintiffs' counsel.  (ECF No. 40-1 at 49.)  The email states: "Thank you Ms. Payne.  I have forwarded the documents."  (ECF No. 40-1 at 49.)  Strangely, neither party has provided the Court with a copy of the attachment from Ms. Payne's email.  In any event, Plaintiffs admit that their application did not include Mr. Breining's social security number and that they failed to answer "all the HAMP questions."  (ECF No. 40-5 at ¶ 18.)

Plaintiffs indicate they received a notice from GMAC that explained that the servicing of their loan had been transferred from GMAC to Defendant.  (ECF No. 40-4 at ¶ 16.)  Ms. Breining indicates in her declaration that the notice included the following:

> Ocwen is committed to helping homeowners.  If you are currently on a trial modification plan or have modification review underway, this process will continue.  You should continue making your payments as required in the modification plan.  **If you recently submitted financial documentation to be considered for payment options, it is not necessary to re-send the documents to Ocwen, as the information will automatically transfer.**

(ECF No. 40-4 at ¶ 17.)  Defendant does not dispute Plaintiffs received this notice or that it contained such a statement.

Citing to the previously mentioned email chain, it is Plaintiffs' position that the following sequence of events occurred: On February 8, 2013, Plaintiffs' counsel contacted Defense counsel to inquire about the status of Plaintiffs' loan modification application.  (ECF No. 40-4 at ¶ 18.)  On February 11, 2013, Plaintiffs again contacted GMAC asking about the status of their loan modification.  (ECF No. 40-4 at ¶ 19.)  In an email seemingly sent on February 12, 2013,

---

[5]  With respect to citation to docket entries, the Court uses the page numbers automatically generated by the ECF system.

4

GMAC's counsel responded in relevant part that he "will provide an update on the loan modification application when I have one." (ECF No. 40-1 at 55.) On February 26, 2013, Plaintiffs, through their attorney, sent an email which they contend constitutes a request for a "Single Point of Contact at Ocwen." (ECF No. 40-4 at ¶ 21.) The Court will reproduce the relevant sentence: "Is there a point of contact over at Ocwen that the Breinings should be contacting directly as I assume you do not represent Ocwen." (ECF No. 40-1 at 57.) Plaintiffs indicate they were not given a "Single Point of Contact at Ocwen." (ECF No. 40-4 at ¶ 22.) Plaintiffs submit that they twice more (on May 30, 2013 and May 31, 2013) requested an update on their loan modification application, without receiving such an update. (ECF No. 40-4 at ¶¶ 23–25.) It is clear from Defendant's submission that it does not view Plaintiffs to have "made an *unequivocal* request to Ocwen on February 26, 2013 to appoint a [Single Point of Contact] or that Ocwen *refused* to appoint such a [Single Point of Contact]." (ECF No. 40-5 at ¶ 20 (emphasis added).) However, Defendant has not taken the position that it actually did appoint a single point of contact. Otherwise, Defendant has not called into question the sequence of events set out in this paragraph.

Defendant submits a copy of a letter, dated June 4, 2013, that it sent to Plaintiffs. (ECF No. 38-1 at 56–57.) Plaintiffs do not dispute they received this letter. (ECF No. 40-4 at ¶ 26.) Neither side has challenged the authenticity or admissibility of this letter. In relevant part, that letter provides as follows:

> We recently received your request for a Traditional loan modification. We are not able to fulfill your request at this time for the following reason(s):
>
> We previously requested additional information from you which had not been received; therefore, we are unable to continue our review for workout solutions.
>
> . . . .
>
> If you believe the denial of your modification was based on inaccurate information, you have until 07/04/2013 to submit documentation to support your request for additional review.

(ECF No. 38-1 at 56.)

As to what happened next, Plaintiffs again submit copies of email correspondences

5

between Plaintiffs' counsel and Defense counsel or persons seeking to be members of their respective offices from later in 2013 and into 2014. (ECF No. 40-1 at 62–64, 66–69.) In short, Plaintiffs' counsel appears to have requested updates as to the status of Plaintiffs' loan modification from Defense counsel (or members of his office) on the following dates: September 19, 2013, September 23, 2013, February 13, 2014, February 25, 2014, March 28, 2014, and April 9, 2014. (ECF No. 40-1 at 62–64, 66–69.) Further, Plaintiffs characterize email correspondences sent on June 10, 2013, and September 23, 2013, as requesting a single point of contact from Defendant. (ECF No. 40-4 at ¶¶ 29, 31.) The Court observes that Defense counsel (or members of his office) seems to have sent emails to Plaintiffs' counsel during this period. (*See, e.g.*, ECF No. 40-1 at 69.)

Defendant has not argued the information summarized in the previous paragraph is irrelevant or immaterial. Nor does Defendant dispute the authenticity of these emails or otherwise challenge them. (*See generally* ECF No. 41.) Rather, Defendant is silent regarding events that followed the June 10, 2013, email Defense counsel sent to Plaintiffs' counsel, stating he was representing Ocwen. (ECF No. 36-4 at ¶¶ 24–25.)

**III.    STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that

6

party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

## IV.  ANALYSIS

### A.  The First and Second Causes of Action

The Court will analyze the First and Second Causes of Action together. However, before turning to the parties' submissions, it will be helpful to first set out the standard for Article III standing. The Supreme Court recently discussed this standard in detail in *Spokeo, Inc. v. Robins* ("*Spokeo*"), 136 S. Ct. 1540 (2016). In relevant part, *Spokeo* provides as follows:

> Although the Constitution does not fully explain what is meant by "[t]he judicial Power of the United States," Art. III, § 1, it does specify that this power extends only to "Cases" and "Controversies," Art. III, § 2. And no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.

> Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood. The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. In this way, the law of Article III standing serves to prevent the judicial process from being used to usurp the powers of the political branches, and confines the federal courts to a properly judicial role.

> Our cases have established that the irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.

*Spokeo*, 136 S. Ct. at 1547 (alteration marks, some internal quotation marks, and some citations omitted).

Plaintiffs have the burden to "demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). If standing is not demonstrated for at least one form of relief sought with respect to a particular cause of action, the parties' dispute is not a "proper case or controversy, [and] the

[federal] courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). That is, upon determining there is no standing with respect to a particular cause of action, a federal court must dismiss that cause of action without reaching the merits. *See Hollingsworth v. Perry*, 570 U.S. 693, 700–01 (2013).

With respect to the First and Second Causes of Action, the parties agree that the SAC sought two forms of relief — (1) damages and (2) injunctive relief. Having carefully reviewed the parties' submissions, the Court concludes that dismissal for lack of subject matter jurisdiction is appropriate here for both causes of action. The reasons for this are straightforward and are not in dispute.

Defendant argues two relevant points in its opening brief. First, Plaintiffs have not suffered legally cognizable damages, under Cal. Civ. Code §§ 2923.7 or 2924.10(a), as they have not lost their home. (ECF No. 36 at 18–19.) Second, with respect to injunctive relief, Defendant argues that there is "nothing to enjoin" as not only is there "no foreclosure pending," Defendant submits "[n]o notice of default, the first step in the non-judicial foreclosure process, has been recorded against [Plaintiffs'] property." (ECF No. 36 at 18–19.) Plaintiffs concede Defendant's first argument is "correct." (ECF No. 40 at 19.) With respect to the second argument, Plaintiffs confirm that they have "checked with the Sacramento County Recorder's Office and presently a Notice of Default has not been recorded." (ECF No. 40 at 20.) While Plaintiffs never use the word "standing," they make an argument that can only reasonably be construed as a standing argument. (*See* ECF No. 40 at 20.) Essentially, they acknowledge they have not suffered damages and foreclosure is not sufficiently imminent to justify standing at this time. (*See* ECF No. 40 at 20.) However, Plaintiffs contend the Court should "dismiss the HBOR claims *without prejudice*," rather than entering summary judgment, in case the threat of foreclosure becomes imminent in the future. (ECF No. 40 at 20 (emphasis retained).) Defendant argues that Plaintiffs' opposition shows they "lack Article III standing on their HBOR claims," and Defendant therefore asks that judgment be entered in its favor. (ECF No. 41 at 7–8.)

Given Plaintiffs' concessions, the Court can only conclude that Plaintiffs do not have standing to bring their First and Second Causes of Action. "[I]njury in fact [is] the first and

9

foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks and alterations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (internal quotation marks omitted). In essence, Plaintiffs take the position, which Defendant does not oppose, that they have not suffered an injury that is "*actual or imminent*." *Id*. (emphasis added). Accordingly, the Court must dismiss Plaintiffs' First and Second Causes of Action for lack of jurisdiction, without reaching the merits of either cause of action, rather than entering judgment in favor of Defendant.[6] *See Hollingsworth*, 570 U.S. at 700–01.

## B. The Third Cause of Action

Plaintiffs' Third Cause of Action is for negligence under California law. Under California law, "[a] plaintiff in a negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 1083 (2017) (internal quotation marks omitted). Having carefully reviewed the parties' submissions, it is readily apparent that Defendant has not met its burden to demonstrate that summary judgment should be entered in its favor.

Defendant has offered arguments on the existence of duty, breach, and damages. The Court finds none of these arguments demonstrate Defendant is entitled to judgment as a matter of law on the Third Cause of Action. The Court can succinctly address the deficiencies in Defendant's arguments as to duty and damages so the Court will address these deficiencies in their entirety. It is not possible to do this with respect to Defendant's discussion of breach of duty. As the Court will explain more fully below, this Court is not required to offer a line-by-line critique of every undeveloped musing that appears in a brief. *See Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001). The Court declines to do so here, particularly as the inadequacies in the briefing prevent the Court from streamlining the

---

[6] Defendant, in its reply, argues for the first time that if Plaintiffs attempt to enjoin a future foreclosure, they still would not have standing because "[f]ederal courts do not issue injunctions concerning past conduct and plaintiffs do not have Article III standing to seek injunctive relief for past conduct." (ECF No. 41 at 7.) The Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). The Court declines to do so here.

issues to be tried.  For efficiency's sake, as to the second element of negligence, the Court will limit itself to discussing Defendant's negligence *per se* argument.

### i.        Existence of a Duty of Care

As Defendant seems to recognize — and then subsequently ignore — "[i]n their negligence cause of action, [Plaintiffs] aver Ocwen breached 'a duty of care to reasonably review them for a loan modification once it undertook to review them for the modification.'"  (ECF No. 36 at 19 (quoting the SAC (ECF No. 25 at ¶ 47).)  What follows next in Defendant's opening brief is confusingly presented.  Defendant argues Plaintiffs "have *no evidence* that Ocwen *breached* any *duty of care owed them*."  (ECF No. 36 at 19, 22 (emphasis added).)  Arguably, Defendant's argument has the following two subparts: In the first subpart, Defendant is seemingly arguing that Defendant does not owe Plaintiffs a duty of care to reasonably review them for a loan modification once it undertook to review them for the modification.[7]  In the second subpart, Defendant's argument seems to be Plaintiff has no evidence that Defendant breached such a duty, assuming it exists.  That is, to the extent that Defendant's opening brief makes an argument regarding the existence of a duty of care *at all*, it is made in the first subpart.

Defendant's discussion of the existence of the first element of a negligence claim is wholly inadequate.  Despite having quoted the duty Plaintiffs contend they are owed, Defendant, without explanation, attempts to reframe the duty as follows:

> Concerning the alleged breach of duty to assign a SPOC, California does not recognize any such common law duty.  Any duty to appoint a SPOC is created by statute.  And the remedy for the violation of that statutory duty is found in the statute, not a common law negligence claim.

(ECF No. 36 at 19.)  This is the totality of Defendant's legal argument on duty, except for the footnote to the final sentence where Defendant admonishes the Court regarding "[t]he judiciary's proper role[.]"  (ECF No. 36 at 19–20 n.16.)  To better understand this inadequacy — and the consequences that will flow from it, the Court will briefly discuss the judiciary's proper role, before turning back to the deficiencies in briefing.

/ / /

---

[7]        Defendant does not suggest that it did not undertake to review Plaintiffs for a loan modification.

a. <u>Roles of the Court and Counsel</u>

In the footnote just referenced, Defendant reminds the Court that the "judiciary's proper role is . . . not [to] mak[e] broad policy or superseding legislative schemes" when determining whether Defendant owed Plaintiffs a duty of care.  (ECF No. 36 at 20 n.16.)  In effect, Defendant is saying "judges should act like judges."  Where, as here, it is done in a respectful way, there is nothing inherently improper in doing that.  Arguably, this happens each time a party argues that a judge should recuse himself or contends that a court is without subject matter jurisdiction.  However, as the Court will address more fully in Section IV.B.i.b of this Order, the problem here is that the parties have inadequately briefed the Court, preventing the Court from definitively resolving the existence of the duty in question without taking up a role that is inconsistent with our adversarial system of litigation.

A federal district court judge "ha[s] a limited and neutral role in the adversarial process, and [must be] wary of becoming advocates who comb the record of previously available evidence and make a party's case for it."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).  Instead, the burden is on the parties, through their attorneys, to advance their case by developing legal arguments and martialing evidence at the appropriate times.  *Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008) (explaining that "[i]n our adversary system, in both civil and criminal cases . . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present").

We are now at the summary judgment stage.  Consequently, Defendant, as the "moving party without the ultimate burden of persuasion at trial . . . has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The extent of the non-movant's burden to respond is dependent on whether the moving party meets its initial burden.  *See, e.g.*, *id.* at 1102–03.  Irrespective of whether the movant meets its burden, "[t]here is no burden upon the district court to distill *every potential argument that could be made* based upon the materials before it on summary judgment."  *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (emphasis added).  Likewise, there is no "duty on the

part of the judge" to research and refine "perfunctory and undeveloped arguments" any time a party's attorney has in the slightest way adverted to such arguments in its submissions. *Williams*, 190 F. Supp. 2d at 1114.

Accordingly, where a movant has not met its burden with respect to a particular claim, a federal district court judge should deny the motion for summary judgment as to that claim. In doing so, he is faithful to the federal judiciary's proper role. With this in mind, the Court will turn back to the parties' submissions on duty of care.

### b. Deficiencies in the Parties' Submissions on Duty of Care

The only authorities Defendant offers in connection with its duty of care argument are: *Sanchez v. Lindsey Morden Claims Services, Inc.*, 72 Cal. App. 4th 249, 251–52, 255 (1999), and *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 694–700 (1988). (ECF No. 36 at 20 n.16.) They are cited in a footnote with little in the way of legal analysis. These citations serve to highlight the deficiencies of Defendant's submission. *Sanchez* and *Foley* have nothing to do with mortgages, loan modifications, or the HBOR. Rather, in *Sanchez*, the California Court of Appeal held that "[a]n independent adjuster engaged by an insurer owes no duty of care to the claimant insured, with whom the adjuster has no contract." *Sanchez*, 72 Cal. App. 4th at 250. In *Foley*, the California Supreme Court held "that tort remedies are not available for breach of the implied covenant in an employment contract to employees who allege they have been discharged in violation of the covenant." *Foley*, 47 Cal. 3d at 700.

Perhaps, general legal principles derivable from *Sanchez* and *Foley could* have made part of a coherent legal argument as to why Defendant does not owe a legal duty to Plaintiffs to reasonably review them for a loan modification once Defendant undertook to review them for such a modification. The problem is that Defendant has not bothered to develop such an argument. *See Bartell v. JPMorgan Chase Bank, NA*, 607 Fed. App'x. 731, 732 (9th Cir. 2015) ("Conclusory statements, tautologies and a couple of citations don't an argument make.") *Sanchez* explained that "[w]hether a duty of care is owed is a legal question, decided by the court[, and] a question of *policy*." *Sanchez*, 72 Cal. App. 4th at 251 (emphasis retained). Further, *Sanchez* identified California Supreme Court decisions "enumerati[ng] . . . policy concerns

governing whether a duty of care should be imposed[.]" *Sanchez*, 72 Cal. App. 4th at 252 (citing *Biakanja v. Irving*, 49 Cal. 2d 647 (1958), and *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (1992)). The California Court of Appeal ultimately concluded "the policy analysis mandated under *Biakanja* and *Bily* militates against imposing in California a new duty of care owed by insurer-retained adjusters to insureds." *Id*. at 255. Defendant has made no effort to identify, let alone engage in, the "policy analysis" that the authority it cites describes as mandatory.

One other point warrants brief mention. Plaintiffs, in their opposition, assert that "Ocwen clearly owed Plaintiffs a duty of care to reasonably review Plaintiffs' HAMP loan modification once it undertook to review them for a loan modification," citing *Alvarez v. BAC Home Loans Servicing*, 228 Cal. App. 4th 941 (2014). (ECF No. 40 at 21.) If one reads *Alvarez* — and compares it to the opposition's unequivocal assertion — serious questions are raised regarding whether Plaintiffs' counsel has also read *Alvarez* and, if she has, whether she has been candid with this Court. The plaintiffs in *Alvarez*, as here, "allege that defendants owed them a duty to exercise reasonable care in the review of their loan modification applications once they had agreed to consider them." *Alvarez*, 228 Cal. App. 4th at 944. There, the California Court of Appeal for the First District found such a duty after analyzing the *Biakanja* factors at length. *See id*. at 945–52. However, it plainly acknowledged that in doing so it was splitting with the California Court of Appeal for the Fourth District's decision in *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49 (2013). *Alvarez*, 228 Cal. App. 4th at 947–948. This split of authority should have been brought to the Court's attention by Plaintiffs' counsel, along with an argument as to why this Court should find one side of the split more persuasive. Thus, while Defendant has not met its burden to show it is entitled to judgement as a matter of law for lack of a duty of care, the Court will not definitively resolve whether there is such a duty, given the poverty of briefing on this point.[8] Simply put, the Court is not obligated to spin out arguments for

---

[8] For the sake of completeness, the Court notes the inadequate briefing continued unabated into Defendant's reply. Defendant did not analyze the split, let alone bring it to the Court's attention. Again, the existence of the split *should have been apparent simply from reading Alvarez*. Tellingly, Defendant never mentions *Alvarez*. Instead, Defendant persists in misunderstanding Plaintiffs, continuing to argue that "California does not recognize a common law duty to appoint a SPOC," and continuing to admonish the Court as to its proper role, citing *Foley* and *Sanchez*. (ECF No. 41 at 8.)

and against the existence of a duty of care in a vacuum unassisted by the parties.

c. <u>Argument Regarding Negligence Per Se</u>

For the remainder of this motion, the Court will assume that Defendant owed Plaintiffs a duty of care to reasonably review them for a loan modification once Defendant undertook to review them for such a modification. One of the ways (if not the principal way) Plaintiffs seek to show Defendant breached its duty of care is utilizing the doctrine of negligence *per se*. (ECF No. 40 at 20–24.) Defendant does not mention negligence *per se* until its reply brief. Accordingly, the Court need not consider Defendant's argument on this point at all. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Even putting that aside, Defendant's four-sentence argument on this point was entirely inadequate.

Defendant argued as follows:

> And the Breinings' "negligence per se" theory attempting to transmute the alleged statutory violation into a negligence claim is utterly misplaced. *See* Opp'n, 16-17. "The doctrine of negligence per se does not provide a private right of action for violation of a statute." *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 738 (2010). Moreover, the "negligence per se" doctrine applies only if the statutory violation "caused death or injury to person or property." Cal. Evid. Code § 669(a)(2); *see also Williams v. Hilb, Rogal & Hobbs Ins. Servs. of Cal., Inc.*, 177 Cal. App. 4th 624, 643 (2009). The alleged failure to provide a SPOC obviously did not cause death or injury to the Breinings' persons or property.

(ECF No. 41 at 8–9.) In effect, Defendant makes two undeveloped arguments, which the Court will address in turn.

First, as *Das* explains, "[u]nder the doctrine [of negligence *per se*], the plaintiff borrows statutes to prove duty of care and standard of care." *Das*, 186 Cal. App. 4th at 738 (internal quotations omitted). In *Das*, the plaintiff "maintain[ed] that her complaints state claims against respondent predicated on the reporting duty imposed under [Cal. Welf. & Inst. Code §] 15630.1." *Id*. at 737. "Her principal contention [was] that her allegations stated a claim for negligence *per se* based on respondent's alleged failure to make the required reports." *Id*. The California Court of Appeal assumed, without deciding, that "the [plaintiff's] allegations regarding [the defendant's] failure to report suspected financial abuse [were] sufficient to trigger the

/ / /

presumption of negligence" under Cal. Evid. Code § 669.[9] *Id*. at 738.

However, the California Court of Appeal noted that it was "well settled that a general provision is controlled by one that is special, the latter being treated as an exception to the former." *Id*. at 738 (internal alteration omitted). It further observed that "subdivision (g) [of Cal. Welf. & Inst. Code § 15630.1] specifically prohibits the employment of the reporting duty to 'limit, *expand*, or otherwise *modify any civil liability or remedy* that may exist under . . . any other law.'" *Id*. (emphasis retained) (quoting Cal. Welf. & Inst. Code § 15630.1(g)). The California Court of Appeal found "[t]his language manifest[ed] the Legislature's intent to forbid the borrowing of the reporting duty for use as a duty of care or standard of care within a negligence claim." *Id*. Defendant has identified no such language in the HBOR.

Second, Ms. Breining has alleged that Defendant's allegedly tortious conduct has damaged her health. Defendant makes no effort to explain why this is not an injury to her person. Similarly, Plaintiffs argue that Defendant's allegedly tortious conduct has damaged their credit. At the risk of stating the obvious, the law generally, and California in particular, recognizes the concept of intangible property. *See, e.g.*, Cal. Com. Code § 9102(a)(42) ("'General intangible' means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software."). It may be that an argument could be

---

[9] Plaintiffs contend — and Defendant does not contest — that California has codified the doctrine of negligence *per se* in Cal. Evid. Code § 669(a). (*Compare* ECF No. 40 at 20 *with* ECF No. 41 at 8–9.) Section 669(a) provides as follows:

> The failure of a person to exercise due care is presumed if:
>
> (1) He violated a statute, ordinance, or regulation of a public entity;
>
> (2) The violation proximately caused death or injury to person or property;
>
> (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and
>
> (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

made that "property" as used in Cal. Evid. Code § 669(a)(ii) should be given a meaning that does not include damages to one's credit. But Defendant's submissions do not include such an argument.

### d. Damages

Defendant's opening brief flatly states Plaintiffs "do not have evidence of damages." (ECF No. 36 at 21.) In their opposition, Plaintiffs cited their depositions and declarations in support of two categories of damages. (ECF No. 40 at 23–24.) In its reply, Defendant argues (for the first time) that "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." (ECF No. 41 at 10.) This argument is coupled with Defendant's incorrect assertion that Plaintiffs have only cited their own declarations. (*See, e.g.*, ECF No. 41 at 9–10.) Consequently, even if the Court accepts that Defendant has correctly stated the law, Plaintiffs have not shown that Plaintiffs' deposition testimony would be insufficient to raise a triable issue as to damages.

## V.     CONCLUSION

For the foregoing reasons, the First and Second Causes of Action are DISMISSED without prejudice, and (ii) Defendant's Motion for Summary Judgment is DENIED as to the Third Cause of Action.

IT IS SO ORDERED.

Dated: March 28, 2018

Troy L. Nunley
United States District Judge